UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRYCE DIXON,

           Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

           Defendant.

CASE NO. 13-cv-05009 RBL

REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT

Noting Date: February 21, 2014

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed (*see* ECF Nos. 13, 19, 20).

Plaintiff has an attention deficit hyperactivity disorder and a bipolar disorder. He also has a long history of drug and alcohol abuse and criminal activity. Although medication improves his functioning, he occasionally chooses not to continue treatment.

Although he has been employed in several occupations including as a pizza delivery person and a landscape worker, he is unwilling to engage in tasks that he does not enjoy and his longest period of employment ended because he went to jail.  Therefore, the ALJ was confronted with the difficult decision of deciding whether or not plaintiff's severe impairments made him incapable of working or whether plaintiff, despite his severe impairments, simply chose not to engage in employment because he did not want to.  The ALJ's adopted the latter position, but unfortunately, failed to set forth specific and legitimate reasons for not incorporating all of the marked and severe limitations listed by examining and reviewing psychologists.  Therefore, this Court recommends that the ALJ's decision be reversed and remanded for further proceedings.

## BACKGROUND

Plaintiff, BRYCE DIXON, was born in 1988 and was 18 years old on the alleged date of disability onset of August 21, 2006 (*see* Tr. 74-79, 862). Plaintiff has a significant history of criminal activity, including arson, theft, burglary, and hit and run.  He also is a registered sex offender (Tr. 869).  Plaintiff graduated from high school (Tr. 884). Plaintiff has worked for a short time at a pizza place and for a few days at some landscaping jobs, but was terminated from all of them (Tr. 884-86).  Plaintiff has demonstrated a lack of motivation to work and has stated that he doesn't want to do things that he doesn't enjoy, an assertion backed by reports from plaintiff's parents (*see* Tr. 513, 681).  He has a significant history of polysubstance abuse (*see* Tr. 869).

Plaintiff has at least the severe impairments of "attention deficit hyperactivity disorder and bipolar disorder (20 C.F.R. §§ 404.1520(c), 416.921(c))" (Tr. 865; *see also*

Tr. 13). The ALJ ultimately concluded that despite these severe impairments, plaintiff could perform full time work in occupations such as a janitor and laundry worker (Tr. 873-74).

At the time of the most recent hearing on September 11, 2012, plaintiff was in jail, charged with first degree arson, but previously had been living with his grandmother (Tr. 884).

## PROCEDURAL HISTORY

> On August 21, 2006, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning August 21, 2006 [ECF No.] 10 at p. 11. The claim was denied initially on November 27, 2006 and upon reconsideration on February 26, 2007. *Id.* Plaintiff appeared and testified at a hearing held on February 10, 2009 in Portland, Oregon. *Id.* On March 24, 2009, Administrative Law Judge Richard Say issued a decision, finding that Plaintiff had not been under a disability at any time since August 21, 2006. Plaintiff thereafter requested review by the Appeals Council. *Id.* at 6. On November 17, 2010, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. *Id.* at 1. Plaintiff then filed a complaint in the United States District Court, Western District of Washington. *Id.* at 933. On December 28, 2011, this Court reversed the opinion of the ALJ and remanded the case for further consideration. *Id.* at 904.
> 
> Upon remand, a second hearing was held before ALJ Say on September 11, 2012. *Id.* at 862. On September 27, 2012, Judge Say once again issued a decision finding that Plaintiff had not been disabled at any time since August 21, 2006. *Id.* at 874. Plaintiff chose not to file written exceptions with the Appeals Council, and the ALJ's decision became the final decision of the Commissioner on November 27, 2012. *Id.* at 860.

(Plaintiff's Opening Brief, ECF No. 13, pp. 1-2).

Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in January, 2013 (*see* ECF Nos. 1, 3). Defendant filed the sealed

administrative record regarding this matter ("Tr.") on March 18, 2013 (*see* ECF Nos. 10, 11).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ erred in his analysis of examining physicians' medical opinions; (2) Whether or not the ALJ erred in his analysis of a non-examining medical expert; and (3) Whether or not the ALJ erred in his discussion of probative third party evidence provided by plaintiff's mother (*see* ECF No. 13, p. 5).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other

citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

## DISCUSSION

(1) **Whether or not the ALJ erred in his analysis of examining physicians' medical opini**ons.

Plaintiff argues that the ALJ erred in his assessment of the medical opinions from Dr. David T. Morgan, Ph.D. and Dr. Kaylen Islam-Zwart, Ph.D.

a. Dr. David T. Morgan, Ph.D.

Dr. Morgan performed two psychological evaluations – one on February 8, 2011 (Tr. 1033-37) and one on May 3, 2012 (Tr. 1072-75). Dr. Morgan was evaluating plaintiff on behalf of the Department of Social and Health Services. The ALJ spent a considerable amount of time discussing Dr. Morgan's first examination of February 8, 2011 (Tr. 871-72), but made only one reference to Dr. Morgan's second psychological examination conducted fifteen months later on May 3, 2012 (Tr. 869 (regarding plaintiff's criminal history)). Dr. Morgan used different forms for each evaluation (*compare* Tr. 1033-37 *with* Tr. 1072-75). In each evaluation, Dr. Morgan noted that plaintiff had established diagnoses of attention deficit/hyperactivity disorder, hyperactive

type; and cannabis dependence, early partial remission (Tr. 1034, 1072), and in both reports, Dr. Morgan indicated that plaintiff's highest GAF score over the past year was 40 (Tr. 1034, 1073). Both reports indicate that plaintiff would have difficulties maintaining employment. In the first report, Dr. Morgan indicated that because of plaintiff's poor concentration he would have marked limitation in his ability to remember appointments and because of his mood swings, he would have a severe impairment in his ability to handle anger issues (Tr. 1034). He also noted marked limitations in plaintiff's ability to understand, remember and persist in tasks following complex instructions of 3 steps or more, the ability to learn new tasks, the ability to communicate and perform effectively in a work setting with public contact and the ability to maintain appropriate behavior in a work setting (Tr. 1035). In the initial evaluation, Dr. Morgan noted that plaintiff was in the intake process at Sea Mar but had been off his medications (Tr. 1033). Dr. Morgan believed at that time that medication management, was "likely to restore or substantially improve" plaintiff's ability to work for pay (*see* Tr. 1036).

Fifteen months later, as a result of the second exam, Dr. Morgan noted that plaintiff was currently on medication to stabilize his mood and noted that he should continue treatment at Sea Mar (Tr. 1073-74). Nevertheless, despite plaintiff being on medication, Dr. Morgan noted that plaintiff continued to have "some limited cognitive functioning that would likely impair his ability to be successful in a traditional work environment" (Tr. 1073). He went on:

> Client would have challenges in employment settings due to a limited ability to comprehend and focus. When he gets frustrated, he may experience feelings of anger towards coworkers. Client would have

challenges adapting to changes in the work environment. Client would
not be able to work in regular employment without help from others,
and the inclusion of supportive employment services is recommended.

(Tr. 1073).

The ALJ's decision does not discuss this second evaluation. Plaintiff argues that the ALJ erred in rejecting this opinion without giving specific and legitimate reasons for doing so (ECF No. 13, pp. 6-8). Defendant argues that the ALJ did not need to discuss this second psychological evaluation because it was not "significant probative evidence" (ECF No. 19, pp. 2-3). Defendant argues that Dr. Morgan's second opinion did not meet the 12-month durational requirement because Dr. Morgan believed the restrictions expressed in his opinion only would last for 8 months (ECF No. 19, p. 2 (*citing* Tr. 1073)). In rebuttal, plaintiff points out that the GAF scores in both reports, which provide an indication of an individual's psychological, social and occupational functioning, was stable at 40 over the past year, indicating a duration of longer than 12 months (ECF No. 20, p. 2 (*citing* Tr. 1073, 1034)). Plaintiff also notes that the baseline comparison between the two reports and the intervening fifteen months between the reports make it clear that plaintiff's impairments exceeded the 12-month threshold (ECF No. 20, p. 2).

On this point, the Court agrees with plaintiff. Reading the two reports together, it is clear that Dr. Morgan believed that plaintiff had functional limitations that lasted longer than one year. It should be noted that in Dr. Morgan's second report, he listed continuing functional limitations despite plaintiff participating in treatment and drug management (Tr. 1073-74). Therefore, Dr. Morgan's belief that plaintiff's functional

capacities would improve with medication management did not bear out to the extent apparently expected by Dr. Morgan during his initial evaluation. Defendant's argument that Dr. Morgan's report is not significant probative evidence is unpersuasive. It is probative, yet ignored by the ALJ in his decision, which constitutes legal error. The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

Because Dr. Morgan's opinions were controverted, his opinion only can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d. 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

Here, the ALJ failed to do so. While it is clear that the ALJ reviewed the second opinion, he provided no analysis of that opinion. The second opinion is significant not only for its additional information, but also for the conclusions reached regarding the lack of improvement in functioning even after plaintiff began using medication, as Dr. Morgan had suggested in his first report. Therefore, the ALJ's failure to discuss this

probative evidence constitutes legal error. Because Dr. Morgan's opinion, if accepted by the ALJ, may have led to a finding of disability, this legal error is not harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases).

    b. Dr. Kayleen Islam-Zwart, Ph.D.

Dr. Islam-Zwart conducted a psychological evaluation for the Department of Social and Health Services on March 3, 2010, while plaintiff was incarcerated at the Airway Heights Correction Center (Tr. 998-1005). Dr. Islam-Zwart performed a mental status examination, as well as other psychological testing (Tr. 1001-02). Plaintiff argues that the ALJ gave no reasons for rejecting marked limitations identified by Dr. Islam-Zwart, including plaintiff's inability to respond appropriately to and tolerate the pressures and expectations of a normal work setting and plaintiff's inability to maintain appropriate behavior in a work setting or to appropriately interact with supervisors (ECF No. 13, p. 9 (*citing* Tr. 873)).

When the decision is unfavorable, it must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion and the reasons for that weight." SSR 96-2p, 1996 SSR LEXIS 9 at *11-*12.

Plaintiff argues that although the ALJ concluded by saying that "the residual functional capacity contains restrictions to account for other deficits identified by this doctor" (Tr. 873), this statement is not supported by the record. Defendant argues that

there is no conflict to resolve. "Because the residual functional capacity accounted for most of the limitations Dr. Islam-Zwart assessed, the ALJ properly weighed Dr. Islam-Zwart's opinion" (ECF No. 19, pp. 3-4). "Most" is not "all." When Dr. Islam-Zwart concluded that plaintiff would be unable to "tolerate the pressures and expectations of a normal work setting" and the ALJ failed to provide for this limitation in his RFC, this constitutes legal error (*see* Tr. 1005). It should be obvious that it is not sufficient simply to conclude that "most" limitations were included in the RFC when this limitation, on its own, likely would render plaintiff incapable of competitive employment. It is unclear the basis for defendant's argument to the contrary. *See* Fed. R. Civ. P. 11(b). Therefore, the ALJ's failure to provide specific and legitimate reasons for rejecting this conclusion constitutes legal error.

### (2) Whether or not the ALJ erred in his analysis of a non-examining medical expert.

Because this matter was remanded for further consideration of Dr. van Dam's opinion (*see* Tr. 921), the Court notes that the ALJ still did not mention Dr. van Dam's conclusion that plaintiff was markedly limited in his ability to understand and remember detailed instructions and was markedly limited in his ability to carry out detailed instructions. This Court previously stated:

> Following remand, the mental residual functional capacity assessment by Dr. van Dam should be evaluated more thoroughly, especially if relied on and given significant weight.

(Tr. 921.)

The ALJ gave Dr. van Dam's opinion "great weight," but no further explanation of these marked limitations was provided nor incorporated into the RFC (*see* Tr. 870; *see also,* Tr. 866). On remand, the ALJ again is instructed to do so.

**(3) Whether or not the ALJ erred in his discussion of probative third party evidence provided by plaintiff's mother.**

Plaintiff argues that the ALJ mischaracterized and failed to account for certain statements by plaintiff's mother, Susan Dixon (ECF No. 13, pp. 12-14).

An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

The ALJ addressed Ms. Dixon's report and gave it "great weight" because it was consistent with the record as a whole (Tr. 871). He concluded that her statements did not demonstrate disability but "show a history of behavioral problems that led to legal problems" (*id.*).

This is a difficult case. Lay people can view a person with plaintiff's severe impairments as either incapable of engaging in employment or willingly choosing not to

do so. The things noted by the ALJ regarding Ms. Dixon's testimony and his reasons for accepting them were germane. Whether or not they support or contradict the ALJ's conclusion regarding employability should be reevaluated on remand.

CONCLUSION

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 21, 2014, as noted in the caption.

Dated this 30th day of January, 2014.

J. Richard Creatura
United States Magistrate Judge